IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN THE MATTER OF THE EXTRADITION )
) No. 19 M 179
OF )
) Magistrate Judge Jeffrey T. Gilbert
SAULIUS BUDRYS, a.k.a. "Saulius Budris" )

## MEMORANDUM OPINION AND ORDER

The Government of Lithuania ("Lithuania") has requested the extradition of Saulius Budrys ("Budrys") for crimes of fraud and embezzlement allegedly committed in 2014. For the reasons discussed below, the Court hereby grants the United States' oral motion to detain Budrys [ECF Nos. 6, 9] and denies Budrys' Motion to Grant Bail. [ECF Nos. 9, 19].

## BACKGROUND

Saulius Budrys is a Lithuanian citizen who has been residing in the United States since September of 2014. In 2011 and 2012, Budrys was hired as a manager for two Lithuanian construction companies, Company O and Company A.[1] In his capacity as a manager, Budrys was responsible for the sale and inventory of building materials at each company. Between March and September of 2014, Budrys allegedly engaged in a scheme to defraud Company O and Company A, as well as two customers of Company O, by either removing company property without accounting for its sale or failing to deposit proceeds from the sale of goods belonging to the company. In total, Budrys is accused of misappropriating building materials in the amounts of 181,152.50 Euros from Company O and 3,921.32 Euros from Company A. He is further charged

---

[1] The Complaint in this case remains under seal at the United States' request and without objection from Budrys to protect the names of certain third parties. [ECF No. 6].

1

with having taken payments of 1,737.72 Euros and 1,000 USD from two customers of Company O, Individual SB and Individual OM, without delivering goods as promised.

In August of 2014, Company O conducted an audit that revealed a substantial amount of property allegedly under Budrys' control was missing. On August 19, 2014, Budrys was notified in writing of the discrepancies, after which he failed to return to work. Company O cancelled Budrys' vacation leave scheduled for September 11, 2014 and ultimately fired Budrys on September 25, 2014. Company A also terminated Budrys on September 22, 2014.

On October 12, 2015, Lithuanian authorities charged Budrys with fraud and embezzlement related to the scheme described above. Lithuania issued an arrest warrant for Budrys on October 29, 2015. Within three months, on January 13, 2016, Lithuania formally requested Budrys' extradition and submitted additional documents to the United States on February 7, 2018 in support of that request. This Court issued a warrant for Budrys' arrest on March 14, 2019 and Budrys was arrested the following day. Budrys has been held in custody since that time and is currently housed at the Metropolitan Correctional Center in Chicago.

The United States orally moved to detain Budrys on March 15 and 29, 2019. [ECF Nos. 6, 9]. Budrys moved to be released on bail on March 29, 2019, and later filed a written Motion and a Memorandum in Support [ECF No. 9, 19, 20], which the United States opposed [ECF Nos. 9, 11]. Budrys filed a Reply in further support of his Motion. [ECF No. 14].

**DISCUSSION**

Budrys seeks release on bail pending a decision on whether he will be extradited to Lithuania. [ECF Nos. 19, 20]. International extradition proceedings are governed by 18 U.S.C. § 3184, a statutory scheme which makes no provision for bail. The Supreme Court subsequently created an avenue for bail in extradition cases, but the path is narrow and reserved for unusual and

extraordinary circumstances. *Wright v. Henkel*, 190 U.S. 40, 63 (1903). The United States has an overriding national interest in complying with treaty obligations, for "if the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives." *Matter of Extradition of Sandor Molnar*, 182 F. Supp. 2d 684, 687 (N.D. Ill. 2002). As a result, the defendant must show "special circumstances" to overcome the presumption against release. *Wright*, 190 U.S. at 63.

While courts have not defined the "special circumstances" that justify release on bail pending an extradition hearing with any particularity, the judicial landscape is at least clear that bail is infrequently granted in extradition cases. *See, e.g., Matter of Extradition of Schumann*, 2018 WL 4777562, at *6 (N.D. Ill. 2018) (inability to have contact with or provide support for family members cannot be considered "special circumstances"); *In re the Extradition of Kyung Joon Kim*, 2004 WL 5782517, at *5 (C.D. Cal. 2004) (medical concerns that can be attended to while incarcerated do not justify bail); *United States v. Nolan*, 2009 WL 4544699, at *3 (N.D. Ill. 2009) (diagnosis of skin cancer and health concerns about defendant's placement in solitary confinement insufficient). Yet there are cases where courts have granted bail, including where the defendant has shown a "high probability of success" on the merits, endured a "serious deterioration of health while incarcerated," or when there has been an "unusual delay in the appeal process." *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989) (citing *Aronson v. May*, 85 S. Ct. 3, 5 (1964); *United States v. Williams*, 611 F.2d 914, 915 (1st Cir. 1979); *Galante v. Warden*, 573 F.2d 707, 708 (2d Cir. 1977)). Most cases isolate a single special circumstance that justifies release, although some courts have evaluated the totality of a defendant's circumstances in evaluating the propriety of bail pending extradition proceedings. *See, e.g., Molnar*, 182 F. Supp. 2d 684, 689 (taking a "collective

approach"); *Matter of Extradition of Morales*, 906 F. Supp. 1368, 1373 (S.D. Cal. 1995); *Matter of Extradition of Nacif-Borge,* 829 F. Supp. 1210 (N.D. Ill. 1993).

While he concedes that he cannot demonstrate a single "special circumstance" that compels his release, Budrys argues that several factors, taken together, rise to the level of "special circumstances" such that the Court should be moved to grant bail. Budrys urges the Court to consider the following "combination of special circumstances:" (1) he characterizes himself as neither a flight risk nor a danger to the community, having lived openly in the United States for almost five years; (2) he is charged with a financial, non-violent crime; (3) he believes he is likely to succeed on the merits of his case in Lithuania; (4) bail would be available to him under these circumstances in Lithuania; (4) Lithuania has failed to act with urgency in seeking his extradition; and (5) removal from the United States will cause significant hardship and possibly deportation for his wife and children. [ECF No. 19, p. 5].

### A.

The first factor Budrys asks this Court to consider is whether he is a flight risk or a danger to the community. A finding in Budrys's favor on this issue would not be determinative, but rather a precondition to a favorable decision if he also could show the existence of "special circumstances." *Molnar*, 182 F. Supp. 2d at 687. "[S]pecial circumstances must exist in addition to absence of the risk of flight before a defendant in an extradition matter could be released from custody." *Id.*; *see also, In re Extradition of Noeller*, 2017 WL 6462358, at *4 (N.D. Ill. 2017); *Salerno,* 878 F.2d at 318.

Budrys has not demonstrated he is not a fugitive. In fact, the record before the Court suggests the opposite. Budrys became aware that his conduct at Company O was the subject of an internal audit in late August of 2014, after which he abruptly stopped coming to work. Despite his

claim that he left Lithuania for a brief, pre-planned vacation to the United States, Budrys took steps before he left the country that raise doubt about his motives. Before leaving Lithuania, Budrys appointed a power of attorney and divested himself of authority over all his finances and real estate holdings in Lithuania for a period of five years. Within two weeks of learning his employer was conducting an audit into his activities, Budrys left Lithuania with his wife and three children and never returned.

This is not a case like *United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49 (D. Mass. 2010), where the defendant had been living openly in the United States for nineteen years before a new foreign government came to power and charged him for criminal offenses that occurred twenty-five years earlier. At the time Budrys left Lithuania, if he was not aware a criminal investigation was ongoing based on Company O's audit, he certainly was on notice it might be imminent. Therefore, contrary to Budrys's arguments, the timing and circumstances of Budrys' move to the United States do not support his argument that he did not flee Lithuania to avoid criminal prosecution.

The Court, however, need not decide whether Budrys likely would flee now if released. Budrys must show both that he is not a flight risk and that special circumstances exist that justify his release on bail. *Noeller*, 2017 WL 6462358, at *4. As discussed below, Budrys cannot do so.

### B.

The Court now turns to Budrys' "combination of special circumstances" argument on the merits. Budrys contends that the nature of his charge should weigh in favor of release; namely, that he is charged with "essentially embezzlement, with no charge of violence, or threats of violence." [ECF No. 19, p. 4]. Yet as other courts have emphasized, "approximately one-third of the extradition cases in the United States concern financial fraud." *Nacif-Borge*, 829 F. Supp. at

1220 (citing Roger M. Olsen, Deputy Assistant Attorney General, *Reform of the Extradition Laws of the United States: Hearings on H.R. 2643 Before the Sub–Committee on Crime*, 98th Cong., 1st Sess. 34 (1983)). The mere fact that Budrys' alleged crime is financial in nature demonstrates nothing "special" about his case.

As for the alleged delay in the proceedings, Lithuania submitted an extradition request within three months of filing criminal charges. While Lithuania continued to supplement its extradition request over the next two years, this delay did not cause the type of harm courts have found sufficiently extraordinary such that release on bail was required. *Castaneda-Castillo*, 739 F. Supp. 2d 49 (delay considered a "special circumstance" where the requesting country waited twenty-five years to file charges); *Matter of Extradition of Drumm*, 150 F. Supp. 3d 92, 99 (D. Mass. 2015). Courts generally consider delay a factor where the extradition hearing itself was significantly delayed or the defendant's liberty interests were greatly affected. *See, e.g., Morales*, 906 F. Supp. at 1375 (finding "special circumstances" where Mexico failed to correct its extradition request in a timely manner, causing the defendant to languish in custody for seven months with no foreseeable end to the extradition proceedings). The "normal passage of time inherent in the litigation process," especially involving complex financial cases, does not constitute a special circumstance. *United States v. Kin–Hong*, 83 F.3d 523, 525 (1st Cir. 1996); *Drumm*, 150 F. Supp. 3d at 99 (no significant delay where Ireland waited several years to charge the defendant with financial crimes and seek his extradition).

Budrys argues that Lithuania delayed in charging him and again in requesting his extradition. Part of the delay, however, was because Lithuanian authorities were trying to speak with Budrys after he left the country. [ECF No. 1, p. 65]. Even if there was some delay on Lithuania's part in finalizing the extradition proceedings, there has been little time wasted in the

proceedings themselves. Nor has any delay affected Budrys' liberty interests adversely. Budrys was arrested on March 15, 2019 and has been in custody for less than a month and a half. He has been living uninterrupted with his family in the United States for almost five years. Aside from his very recent arrest, he has felt little to no effects of the criminal proceedings in Lithuania. Budrys himself says he has had no need to return to Lithuania or concern himself directly with the charges, as he has been "working with his personal representative – who was authorized by a power of attorney to act in such a capacity – and an lawyer's assistant in Lithuania to resolve the charges without his return." [ECF No. 19, p. 3]. Any delay in the extradition process, therefore, has neither affected Budrys' life here in the United States nor his ability to mount a defense to the charges in Lithuania. The Court is unpersuaded that any delay in Lithuania's completing its extradition request constitutes a "special circumstance."

A high probability of success on the merits at an extradition proceeding is a "special circumstance" that bears significant consideration by the Court. *United States v. Kin–Hong*, 83 F.3d 523, 524 (1st Cir.1996); *Salerno*, 878 F.2d at 317. At his extradition hearing, however, Budrys will have only a limited right to challenge the evidence against him, as it "is not a trial on the merits of the charges. It is more in the nature of a preliminary hearing" and will be evaluated under a probable cause standard. *Matter of Extradition of Cruz Montes*, 2016 WL 6248184 (N.D. Ill. 2016) (citing *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993)). The judge's role at an extradition hearing is to decide "whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006), quoting *Sidali v. I.N.S.*, 107 F.3d 191, 199 (3d Cir. 1997).

Therefore, an accused facing extradition "has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof." *Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981), cert. denied, 454 U.S. 894 (1981); *see also, Noeller v. Wojdylo*, 2019 WL 1893643, at *7 (7th Cir. 2019). Explanatory evidence may otherwise be described as "evidence that 'explains away or completely obliterates probable cause.'" *Noeller*, 2019 WL 1893643, at *7, quoting *Santos v. Thomas*, 830 F.3d 987, 992 (9th Cir. 2016); *see e.g., In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 738–41 (W.D. Louisiana 1999) (holding that a credible and persuasive alibi would likely negate the existence of probable cause at an extradition hearing because it did not merely controvert the evidence of the requesting country); *Charlton v. Kelly*, 229 U.S. 447, 462 (1913) (evidence of insanity is not admissible at an extradition hearing and must be presented at a trial or preliminary hearing "in the jurisdiction of the crime").

Budrys offers evidence to support his argument that he has a high probability of success on the merits of his extradition proceeding. Regarding Company O, Budrys produced preliminary and final versions of a March 2019 forensic auditor's report prepared during Company O's bankruptcy proceeding, as well as a letter in which Company O asked to discontinue its civil action against Budrys. [ECF No. 17, p. 36-37, 57-74; No. 16, p. 2]. With respect to Company A, Budrys has tendered a copy of a civil settlement agreement that shows he paid 1,000 Euros to Company A in 2015. [ECF No. 17, p. 79-80].

Both the forensic auditor's reports and the settlement agreement are intended to contradict Lithuania's evidentiary proof, which includes but is not limited to seven witness statements, financial documents from Company O and Company A, and expert reports involving Company A. [ECF No. 1, p. 48-49, 55-58, 64-66]. For example, the forensic auditor's report directly challenges

whether Budrys was singularly in charge of assets he is alleged to have misappropriated from Company O and whether documents exist to prove his level of responsibility. [ECF No. 17, p. 59]. This evidence ultimately may be relevant to Budrys' guilt or innocence at trial in Lithuania, but it is classic contradictory evidence meant to rebut the evidence presented in support of Lithuania's extradition request. It is therefore the precise character of evidence the Seventh Circuit has cautioned is "off-limits" at an extradition hearing. *Noeller*, 2019 WL 1893643, at *7 (citing *Eain*, 641 F.2d at 511); *see also, Matter of Extradition of Contreras*, 800 F. Supp. 1462, 1464 (S.D. Tex. 1992) ("If the evidence merely controverts the government's probable cause evidence, or raises a defense, then it is excluded.") The ultimate issue of Budrys' guilt or innocence is for Lithuanian courts, not United States courts, to decide. *Noeller*, 2019 WL 1893643, at *6 ("Extradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law.")

In addition, even if the Court believed Lithuania might accept the conclusions of the forensic auditor's report and dismiss the charges against Budrys with respect to Company O, Budrys would still stand accused of financial crimes against Company A and two individual victims, SB and OM. While Budrys characterized these charges as minor at the hearing before this Court on March 29, 2019, Lithuania considered these offenses serious enough to charge Budrys criminally and ask the United States to extradite him so he can stand trial for them. The Court is not persuaded that Budrys' right to bail, or likelihood of success on the merits, rises and falls with the dollar amount of the alleged fraud.

Furthermore, that Budrys agreed to pay Company A 1000 Euros in 2015 does not negate the criminal charge concerning his alleged fraud and embezzlement from that Company. Civil and criminal proceedings are different in kind and nature, and resolution of civil claims advanced by

either Company A or Company O does not exempt Budrys from criminal prosecution for the underlying offenses. Moreover, considerations relevant to the discontinuance of the civil actions may not dissuade the criminal prosecutor from proceeding against Budrys. The Court notes that the Lithuanian prosecutor, who received the settlement letter involving Company A, the auditor's report concerning Budrys' activities at Company O, and Company O's request to terminate its civil action against Budrys, has not moved to dismiss the criminal case, nor has Lithuania withdrawn its extradition request.

Budrys also asks this Court to consider that he would likely be released on bail on these offenses if he were being prosecuted in Lithuania. While some courts have considered this factor a "special circumstance," most have not. *Matter of Extradition of Rouvier*, 839 F. Supp. 537, 540 (N.D. Ill. 1993) (finding the availability of bail in the foreign country an "improper" consideration); *accord In re Extradition of Siegmund,* 887 F. Supp. 1383 (D. Nev. 1995); *Matter of Extradition of Sutton*, 898 F. Supp. 691, 695 (E.D. Mo. 1995) ("The purpose of an international extradition proceeding 'is not to mirror the internal bail practices of the requesting country, but, rather, to deliver the extraditee to that country' if the conditions for extradition are met); *contra Nacif–Borge,* 829 F. Supp. 1210; *In re Gannon,* 27 F.2d 362 (E.D. Pa. 1928). Courts that have declined to evaluate the availability of bail in the requesting country have aptly pointed out that if this were a factor, "most extraditees would be entitled to bail. This directly contradicts Supreme Court and federal appellate court decisions which conclude bail is the exception rather than the rule." *Rouvier,* 839 F. Supp. at 540-41. Such an analysis would also "force courts to make searching reviews of foreign laws to determine whether bail is appropriate for a given defendant in a given country for a given offense." *Id.*

The Court agrees the potential that a Lithuanian court could release Budrys on bail on the charges he is facing is not a special circumstance under United States law. Extradition proceedings are not intended as a mechanism by which United States courts may scrutinize and interpret Lithuanian law. *Noeller*, 2019 WL 1893643, at *6 ("Extradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law."). Nor should a United States court have to decide what legal conclusion a Lithuanian court would reach on bail based on its interpretation of criminal procedure and common practice in Lithuania. The Court therefore declines to consider the possible availability of bail in Lithuania a "special circumstance" here.

The Court is not unsympathetic to the impact Budrys' custodial status will have on his family, especially given that he portrays himself as the primary caretaker of his three young children while his wife pursues her education. [ECF No. 19, p. 5]. But almost every defendant involved in extradition proceedings faces removal from an environment to which they have become accustomed: life in the United States. "A defendant's incarceration regularly creates difficulties for him and his family," both financial and emotional. *United States v. Mahabir*, 858 F. Supp. 504, 508 (D. Md. 1994). Because of this, courts have found that "[e]motional hardship for the family of a fugitive facing extradition is present in almost all cases and therefore [does] not constitute a 'special circumstance.'" *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1088 (C.D. Cal. 2010) (internal quotations omitted) (citing *Matter of Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir.1986)); *see also, Drumm*, 150 F. Supp. 3d at 99 ("the fact that the defendant's family depends on him for financial and emotional support is not a special circumstance weighing in favor of release.").

Budrys also suggests his wife and children could face deportation if he is not released pending an extradition hearing. Not only is this speculative, but Budrys' wife and children reside

in the United States pursuant to Budrys' wife's student visa. Budrys' wife also reported independent income and close family ties in the Chicago-area such that she and her children likely will have support in Budrys' absence. [ECF Nos. 12, 17, p. 2-3]; *Beresford-Redman*, 753 F. Supp. 2d at 1089 (denying bail where the defendant's young children had recently suffered the death of their mother and emphasizing that the children "appear[ed] to have a loving and supportive family beyond their father and will be well cared for during his absence"). Accordingly, the Court rejects this factor as a special circumstance favoring bail in this case.

The Court has considered all the circumstances in this case, both individually and in totality, and finds Budrys has not demonstrated special circumstances that justify his release from custody pending an extradition hearing.

## CONCLUSION

For the reasons discussed above, the Court hereby grants the United States' oral motion to detain Budrys [ECF Nos. 6, 9] and denies Budrys' Motion to Grant Bail [ECF No. 19].

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 2, 2019